UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERALD NARANJO,

    Plaintiff,

v.

NUSENDA CREDIT UNION,

    Defendant.

Case No. 2:18-cv-12977-LJM-RSW
Honorable Laurie J. Michelson

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [11]**

The Court must decide whether requiring Nusenda Credit Union to defend Gerald Naranjo's lawsuit here, in Michigan, would violate Nusenda's rights under the Due Process Clause. As explained below, the answer is "yes."

In 2006, Naranjo was living in New Mexico. (ECF No. 14, PageID.101.) And, at that time, Naranjo wanted to buy a Mazda MX5. (*Id.*) He decided to finance the purchase by obtaining a loan from Nusenda Credit Union. (*Id.*)

In 2008, Naranjo moved to Michigan. From here, Naranjo continued to make his monthly loan payments to Nusenda. (ECF No. 14, PageID.101.)

But starting in January or February 2009, Naranjo was "unable to keep up with the payments and [his] account with Nusenda became delinquent." (ECF No. 14, PageID.101.) So, in March or April 2009, Nusenda repossessed the Mazda. (*Id.*) Nusenda sold the car but the proceeds did not cover all that Naranjo owed. (ECF No. 13, PageID.96.) So, in July 2009, Nusenda sent Naranjo a letter, to his address in Michigan, stating that he still owed about $7,000 and that interest was accruing. (*Id.*)

As far as the current record and pleadings go, things went dormant for almost nine years.

At some point, apparently in 2018, Naranjo noticed that the Nusenda delinquency was appearing on a credit report prepared by Experian. (*See* ECF No. 9, PageID.52.) Naranjo believed this to be error because consumer reporting agencies are not supposed to include certain "adverse item[s]" that are more than seven years old, *see* 15 U.S.C. § 1681c(a)(5), and, as noted, Naranjo received the deficiency letter in 2009. (*See* ECF No. 13, PageID.81.) So, in June 2018, Naranjo contacted Experian to dispute the Nusenda entry on his credit report. (*See* ECF No. 14, PageID.102.) But, says Naranjo, Nusenda did not adequately investigate the issue and continued to tell consumer reporting agencies that he first became delinquent in 2012. (ECF No. 13, PageID.81–82; ECF No. 9, PageID.53); *see also* 15 U.S.C. § 1691s-2(a)(5) (placing obligation on furnishers of information to provide consumer reporting agencies with the date of delinquency). So Naranjo sued Nusenda for violating the Fair Credit Reporting Act. And his chosen forum was this federal court in Michigan.

Nusenda says this case should be dismissed for lack of personal jurisdiction. In particular, the credit union asserts that requiring it to defend against Naranjo's FCRA claims in Michigan would violate its rights under the Due Process Clause. (ECF No. 11, PageID.67–68.)

Naranjo does not argue that Nusenda, a New Mexico company, is "at home" in Michigan. *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014). So that leaves Naranjo with specific personal jurisdiction.

To establish specific jurisdiction, Naranjo must show that (1) Nusenda purposefully availed itself of the privilege of acting in Michigan or caused a consequence here, (2) that his claims under the Fair Credit Reporting Act arise out of Nusenda's Michigan activities, and (3) that requiring Nusenda to defend here would comport with fair play and substantial justice. *See AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549–50 (6th Cir. 2016). Because the parties have relied solely

on the pleadings and affidavits, Naranjo's burden of establishing personal jurisdiction is "relatively slight." *Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007).

Slight though it is, Naranjo has not carried his burden. A review of the affidavits and pleadings reveals that what gave rise to Naranjo's claims under the FCRA was Nusenda's continued reporting of the delinquency more than seven years after 2009. But Naranjo does not say that Nusenda's reporting (or Nusenda's investigation into the onset date) occurred in Michigan. Indeed, it appears that they occurred in New Mexico (or, maybe, where the consumer reporting agencies are located). As such, the Court fails to see how any of Nusenda's actions that led to this suit involved Michigan.

Naranjo thinks he can see a way. He points out that Nusenda knew that he was living in Michigan. (ECF No. 13, PageID.86.) And, argues Naranjo, with knowledge that he was located in Michigan, Nusenda reported the too-old delinquency to consumer reporting agencies. (ECF No. 13, PageID.87.) In other words, citing *Calder v. Jones*, 465 U.S. 783 (1984), Naranjo argues, "when a defendant's tortious conduct is directed toward a plaintiff known to inhabit a certain state, such that the tortious conduct can itself be said to be expressly aimed at that state, then the exercise of personal jurisdiction in that forum state is proper." (ECF No. 13, PageID.85 (citing *Calder*, 465 U.S. at 788).)

As this Court has explained, *see Vangheluwe v. Got News, LLC*, 365 F. Supp. 3d 850, 856 (E.D. Mich. 2019), and more importantly, as the Supreme Court has explained, *see Walden v. Fiore*, 571 U.S. 277, 287–88 (2014), the exercise of personal jurisdiction in *Calder* was based on more than a finding that the defendants could foresee injury in the forum state. True, it was plenty foreseeable to Calder and the other defendants that Shirley Jones would be defamed in California (the forum state); but it was also true that the National Enquirer had "a California circulation of

roughly 600,000," that "[the] defendants relied on phone calls to 'California sources' for the information in their article," and that the defendants "wrote the story about the plaintiff's activities in California." *Walden*, 571 U.S. at 287. Thus, as *Walden* clarified, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." 571 U.S. at 290; *accord Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 103 (5th Cir. 2018) (noting that the Supreme Court clarified in *Walden* that "mere injury to a forum resident is not a sufficient connection to the forum"). And that rule holds even if the defendant knows that the plaintiff has substantial connections to the forum state when it engages in the allegedly wrongful activity. *See Walden*, 571 U.S. at 289 ("[Defendant's] actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections."); *Axiom Foods, Inc. v. Acerchem Int'l Inc.*, 874 F.3d 1064, 1069–70 (9th Cir. 2017) ("In *Walden*, the Supreme Court rejected our conclusion that the defendants' knowledge of the plaintiffs' strong forum connections, plus the foreseeable harm the plaintiffs suffered in the forum, comprised sufficient minimum contacts." (internal quotation marks and alterations omitted)); *Maxitrate Tratamento Termico E Controles v. Super Sys., Inc.*, 617 F. App'x 406, 408 (6th Cir. 2015) ("Hedman relies on language in *Calder* suggesting that, if a defendant knows that its intentional acts will cause effects in a state, then that state can exercise jurisdiction over the defendant. But the Supreme Court rejected that theory of personal jurisdiction (and that interpretation of *Calder*) last year in *Walden*." (citations omitted)); *Cunningham v. Nationwide Sec. Sols., Inc.*, No. 3:17-CV-337, 2018 WL 4575005, at *15 (N.D. Tex. Aug. 31, 2018) (explaining, in case where defendant accessed plaintiff's credit report without authorization, "since the Supreme Court issued its decision in *Walden* and in relying on its holding, courts have held

that a defendant's allegedly violating the FCRA to harm a plaintiff known to reside in the forum state, without more, does not establish purposeful availment of the forum state's privileges"), *report and recommendation adopted*, 2018 WL 4568803 (N.D. Tex. Sept. 24, 2018).

Perhaps recognizing that his broad reading of *Calder* might not carry the day, Naranjo also argues that this case involves more than just foreseeable injury within the forum state. (*See* ECF No. 13, PageID.87–88.) Urging the Court to take a broader view of Nusenda's conduct, Naranjo asserts that the activity giving rise to his suit is not just Nusenda's reporting of a too-old delinquency. Instead, he says, the relevant activity includes Nusenda's attempts, in Michigan, to collect a debt. Naranjo points out that Nusenda accepted monthly loan payments from Michigan, had an agent repossess collateral located in Michigan, and then sent a letter about the post-sale deficiency to him in Michigan. (ECF No. 13, PageID.88.) Naranjo says that Nusenda's "failure to correct its inaccurate reporting regarding the account is simply its latest effort to collect the debt from [me] in Michigan." (ECF No. 13, PageID.88.)

The Court begins with Naranjo's reliance on the loan payments, the repossession of the Mazda, and the deficiency letter. Sure, those were contacts with Michigan—in 2009. Yet the events giving rise to this suit did not occur until at earliest in July 2016, when, according to Naranjo, Nusenda continued to report the delinquency despite it being, at that point, seven years old. In other words, even if the loan, the repossession, and the outstanding deficiency are but-for causes of Naranjo's Fair Credit Reporting Act claims, they are too remote to be proximate causes of that cause of action. *Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 507–08 (6th Cir. 2014) ("[M]ore than mere but-for causation is required to support a finding of personal jurisdiction. . . . [T]he plaintiff's cause of action must be proximately caused by the defendant's contacts with the forum state."). The events that proximately caused Naranjo's FCRA claims are

5

the following: (1) seven years had lapsed since July 2009 such that by July 2016 the delinquency was too old to appear on Naranjo's credit report, (2) Nusenda reported to Experian (or other consumer reporting agencies) that the delinquency began in 2012 such that it continued to appear on Naranjo's credit report after July 2016, and (3) after being informed of the issue, Nusenda did a poor investigation and continued to report the delinquency as beginning in 2012. None of that has to do with Nusenda's contacts with Michigan in 2009.

With Nusenda's 2009 conduct being too far down the causal chain, Naranjo is left with Nusenda's alleged misreporting of the delinquency beginning in July 2016 (or, at latest, in June 2018 when Naranjo noticed it). As noted, Naranjo claims that Nusenda reported this delinquency as a means of strong-arming him into paying the deficiency. So, in his view, Nusenda engaged in debt collection within Michigan.

Naranjo's debt-collection theory is factually and legally flawed. Factually, it is unclear whether Nusenda still wanted to collect the debt in July 2016 (or now) or that it even could if it so wanted. Nusenda may have sold the debt by then. Or the statute of limitations may have run by that time. Or, perhaps, Nusenda was not trying to get Naranjo to pay by reporting the delinquency to Experian and others, but instead was merely following industry practice. Sure, all of that is somewhat speculative. But it is Naranjo's burden to establish personal jurisdiction, *Air Products*, 503 F.3d at 549, and he has offered nothing to address these possibilities.

And even setting aside Nusenda's ability or desire to collect the debt, Naranjo's debt-collection theory is legally flawed. As explained, in *Walden*, the Supreme Court clarified that a defendant's actions outside the forum state that foreseeably cause injury to a plaintiff residing in the forum state are not, by themselves, forum contacts sufficient to exercise personal jurisdiction. But how is Naranjo's theory any different? He says that a defendant's actions outside the forum

state that foreseeably dun a plaintiff residing in the forum state are, by themselves, forum contacts sufficient to exercise personal jurisdiction. Swap "dun" for "injury" and Naranjo's rule runs headlong into *Walden*.

Largely for this same reason, Naranjo's principal case is unpersuasive. True, that case found that a non-forum-state defendant's attempt to collect a debt from a forum-state plaintiff was contact sufficient to exercise personal jurisdiction over the defendant. *Abdrabboh v. Capital One Bank*, No. 06-11762, 2006 WL 3004084, at *6 (E.D. Mich. Oct. 20, 2006). But *Abdrabboh* relied heavily on *Brewer v. Transunion* and *Rivera v. Bank One*, and those two cases applied (or at least arguably applied) the broad reading of *Calder* that was rejected in *Walden*. *See Brewer v. Transunion, L.L.C.*, 453 F. Supp. 2d 1346, 1350 (S.D. Ala. 2006) ("The so-called 'effects test' adopted [in *Calder*] provides that intentional and allegedly tortious actions which the actor knows will be felt in another state are sufficient to justify the exercise of personal jurisdiction."); *Rivera v. Bank One*, 145 F.R.D. 614, 622 (D.P.R. 1993) ("[W]e must determine whether an act of a corporation outside a state that causes tortious injury within the state can subject the corporation to the jurisdiction of a federal court in that forum. The case *Calder v. Jones* . . . is controlling on this point.").

And even if *Abdrabboh* is entirely consistent with *Walden*, it is factually distinguishable. In that case, there was stronger evidence that the defendants there were trying to get the plaintiff to pay the debt and because the plaintiff brought claims under the Fair Debt Collection Practices Act as well as the FCRA. 2006 WL 3004084, at *2.

Naranjo's other cases are likewise materially different. *Cf. Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 166–67, 168 (2d Cir. 2015) (finding, where plaintiff brought claims under the FDCPA, that defendant's dunning letters and calls to plaintiff were sufficient to hale defendant

7

into a court in the plaintiff's state); *Fagan v. Lawrence Nathan Assocs., Inc.*, 957 F. Supp. 2d 784, 793 (E.D. La. 2013) (finding, where plaintiff brought claims under the FDCPA and FCRA, that defendant's two dunning letters to plaintiff were sufficient to hale defendant into a court in the plaintiff's state); *Vlasak v. Rapid Collection Sys., Inc.*, 962 F. Supp. 1096 (N.D. Ill. 1997) (finding, where plaintiff brought claims under the FDCPA, that defendant's dunning letters and calls to plaintiff were sufficient to hale defendant into a court in the plaintiff's state).

Naranjo understandably desires to litigate in his home state. But Nusenda's actions that proximately led to Naranjo's FCRA claims did not adequately involve Michigan. Thus, Nusenda's motion to dismiss is GRANTED.

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Date: June 25, 2019

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on June 25, 2019.

s/William Barkholz
Case Manager to
Honorable Laurie J. Michelson

8